STATE v. WILKES MORRIS.

*Legislative Power over Charter—Lotteries—Constitution.*

1. A right, conferred in the charter of a corporation, to dispose of property by means of lottery tickets, is not a *contract* between the corporation and the State, but a mere *privilege* or *license*, and is revocable at will by the legislative power.

2. The act of 1875, (Laws 1874–'75, ch. 96) does not repeal the charter of the N. C. Beneficial Association, but restrains the corporation from disposing of property by lottery (which was allowed by its charter ) and is not in conflict with the Constitution of the United States.

(The power of the General Assembly to repeal or modify charters, and to revoke licenses, discussed by BYNUM, J.)

INDICTMENT for conducting a Lottery, tried at June Term, 1877, of the Criminal Court of NEW HANOVER, before *Meares, J.*

The case is fully stated and discussed by Mr. Justice BYNUM in delivering the opinion of this Court. Upon the special verdict His Honor adjudged the defendant not guilty, and *Moore,* Solicitor for the State appealed.

*Attorney General,* for the State.
*Messrs. D. L. Russell* and *A. W. Tourgee,* for the defendant.

BYNUM, J. The defendant is indicted for conducting a lottery, and the case is here by appeal from the judgment of the Court below on a special verdict of the jury which is in the following words: "That the defendant did expose to sale by lot or chance, and did offer to dispose of, by lot or chance, personal property of the value of five hundred dollars, and that defendant in doing so acted as the general manager of a company known as the North Carolina Beneficial Association, &c."

This association was incorporated in 1870, (Private Laws 1869–'70, ch. 14) for the period of thirty years subject to the payment of such taxes as may be required of Insurance Companies, and was clothed with power to sell and dispose of real or personal property purchased by them or placed in their hands for sale, by lot or chance, or in any other mode the association might deem best.

Subsequent to this act of incorporation and the organization of the Company under it, to-wit; in 1875, it was enacted (Laws 1874–75) that all persons, associations or organization of persons whatsoever, who engage in disposing of property of any kind by the distribution of gifts, prizes, or certificates sold for that purpose, shall be indictable under the provisions of the general law prohibiting lotteries, as contained in Bat. Rev. ch. 32, § 69. The Act contains a *proviso* allowing such lottery companies as had theretofore sold tickets, the proceeds of which were to be applied exclusively to benevolent or charitable purposes, until January the 1st, 1876, to close their business. This *proviso* is material only as showing that all other lottery associations whatever except those for charitable purposes fall within the prohibition, whether specially named or not. No other reasonable construction can be put upon the sweeping language of the Act; "*any* person or persons, association, company or organization *whatsoever*. The indictment is for vending lottery tickets since the Act of 1875.

The defendant denies that he is indictable, because he says that by the Act incorporating the " North Carolina Beneficial Association " a contract was created between the State and the Company which is protected by the Constitution of the United States and cannot be annulled or impaired by subsequent legislation; that having had conferred upon it by charter, the right to sell and dispose of property by lot or chance, the Legislature cannot make the exercise of the right unlawful and a crime.

The first and main question is, whether a right to vend lottery tickets conferred in the charter is a contract at all, within the meaning of the Federal or State Constitution. We think it is not, but that it is only a privilege, permit or license subject to withdrawal whenever the Legislature in the exercise of the general police power of the State may deem its exercise prejudicial to the public morals or the general welfare of society. Every grant from the State is received with the implied condition that all the rights conferred by it are subservient to such regulations as the Legislature may establish for the preservation of the public morals, the prevention of intemperance, pauperism and crime, and for the abatement of nuisances. It has never been held that the legislative exercise of these police powers is void, even where it incidentally tends to prevent the fulfilment of contracts previously made, and thereby violates the obligation of contracts. In the celebrated "License Cases" arising out of the State laws, known as the Prohibitory Liquor Laws, it was held competent to declare all liquor kept for sale, a nuisance; and to provide legal process for its condemnation and destruction; and to seize and condemn the building occupied as a dram shop, on the same ground. *Our House* v. *State*, 4 Greene, (Iowa), 172; *State* v. *Robeson*, 33 Maine, 568; License Cases, 5 How. 589; *People* v. *Hawley*, 3 Mich. 330. Cooley Const. Lim. 583, 595, 596.

In discussing the meaning of the word "obligation" of a contract as used in the Constitution of the United States, as it may affect the power of the State to enact general police regulations for the preservation of the public morals, Mr. Parsons says;—"Can a Legislature having authorized an individual or a company to raise a certain sum of money by lotteries, or after having licensed individuals to sell spirituous liquors for a certain period, afterwards for the purpose of preserving the public morals recall such authority or license by a general law prohibiting lotteries or the sale of spiritu-

ous liquors? And if this can be done when the grant is gratuitious, can it be done if a certain price or premium is paid for it?" After stating that the prevailing adjudications of this country favor the rule that such general laws are not in either case within the purview or prohibition of the Constitution, he proceeds;—"If nothing is paid for the license or authority, the authorities are quite uniform that it may be taken away by such general law," and although there are cases which hold that where a fee, or premium has been paid, it constitutes a contract, binding on both parties, he concludes that the prevailing authorities hold that even in that case it is not such a contract. 3 Pars. on Contracts, 556, 557, 5th Ed; *Phalens case,* 1 Rob. 713; *Phalen* v. *Virginia,* 8 How. 263 ; *Baker* v. *Boston,* 12 Pick. 194; 7 Cowen, 349.

It cannot be denied that lotteries are a species of the games of hazard more alluring and more generally indulged in, publicly and secretly, than any other form of gambling, and that they are pernicious to good morals and industry. The policy of the State has been almost from the beginning opposed to lotteries, and they have been prohibited by law and punished as gambling. Why has not the Legislature the power to suppress this enormous vice, as it has to prevent the rise and spread of any other dangerous contagion? Suppose a reckless Legislature should incorporate a school for prostitution, or a gambling saloon, or a company for the sale of obscene and indecent books and pictures, can it be thought for a moment that a succeeding Legislature could not repeal such legislation and make these pursuits criminal? A doubt about the power would shock the moral sense ; and to hold that such grants by the State are contracts protected from repeal or change by the Constitution of the United States, would subvert the well being of society and was never contemplated. *Moore* v. *The State,* 48 Miss. 147, is a case directly in point, though much stronger than ours. There a corporation was created by the Legislature

for twenty-five years on the payment of a *bonus* of $5,000 to the State, and on giving bond for the further payment of a certain per cent on its profits, was authorized to carry on the lottery business. It was created and complied with all terms in 1867. Afterwards in 1869, the Constitution was adopted which prohibited all lotteries to be authorized thereafter, and also provided that those then in existence should not be drawn, or the tickets therein be sold. The defendant claiming to act under his charter of 1867, did not desist from his business and was indicted and convicted. On appeal by the defendant it was held that he was properly convicted, and that authority to raise money by lotteries or to sell spirituous liquors is not protected by the prohibition in the Federal Constitution against impairing the obligation of contracts ; it not being the intention of the prohibition to restrain the police power of the States in the preservation of the public morals, and that the State cannot abnegate or surrender the duty which is perpetually upon it to consult the physical and moral good of the people. *Prigg* v. *Pennsylvania*, 16 Pet. 625 ; 9 Wheat. 203 ; *Stuyvesant* v. *Mayor of New York*, 7 Cowen.

The "North Carolina Beneficial Association" is an imposing title, but the law has pronounced it in its lottery features to be a cheat and a nuisance to be suppressed like other public pestilences. Of all the forms of gambling it is the most wide-spread and disastrous, entering almost every dwelling, reaching every class, preying upon the hard earnings of the poor, and plundering the ignorant and simple. 8 How. 168. It is not in the power of the Legislature to either give or sell out for a consideration the public police power of the State, or so to bind the hands of government as to disable it for the period of thirty years from prohibiting what may be considered as an immoral and corrupting pursuit. To conduct a lottery is a mere permit or privilege revocable at the will of the Legislature, and cannot be dignified with

the name and substance of a *contract*. *Reynolds* v. *Geary*, 26 Conn. 179 ; *Commonwealth* v. *Kindall*, 12 Cush. 414; 5 Gray, 97; 13 Gray, 26; Cooley Const. Lim. 583, 584; *Fell* v. *State*, 42 Md. 71.

It is to be observed that the Act of 1875, by virtue of which this prosecution has been instituted, does not repeal or profess to repeal the Act incorporating the North Carolina Beneficial Association. The corporation still exists and is clothed with all the rights of buying, receiving and selling real and personal estate, as are possessed by individuals, or conferred upon other corporations. The only effect of the Act of 1875, is to restrain the Association from disposing of property by lottery or the selling of chances, and this is done in the reasonable exercise of the police power of the State.

In the view we have taken as one not involving the question of contract, it does not become important to inquire into the extent of the powers of the Legislature over corporations created since the adoption of the Constitution of 1868. This corporation has been created since, and falls within the operation of Art. VIII, § 1 of the Constitution, by which it is provided, that corporations other than municipal, may be created by general laws or special acts, but that all such general laws or special acts may be altered from time to time or repealed. The most obvious construction to be placed upon this clause of the Constitution is, that all subsequent acts of incorporation partaking of the nature of contracts between the State and the incorporators are granted and taken in reference to this power of alteration or repeal by the Legislature, and that this power of change or repeal is a part of the contract itself. But it cannot probably be maintained that this power over new corporations is unlimited and without qualification. The Constitution of Massachusetts has a clause similar to ours, and a new and onerous duty was imposed upon a corporation by the Legislature for the non-performance of which it was indicted. The Court

held that it had not this unlimited power and this case is put :—Suppose an authority has been given by law to a Railroad Company to purchase a lot of land for railroad purposes, and they purchase such lot from a third person ;—could the Legislature prohibit the company from holding it ? —if so, in whom should it vest ?—or could the Legislature direct it to re-vest in the grantor, or escheat, or how otherwise ? In that case the rule suggested as the most reasonable was this ; that where under a power in a charter rights have been acquired and become vested, no amendment or alteration of the charter can take away the property or rights which have become vested under a legitimate exercise of the powers granted. *Commonwealth* v. *Essex Company,* 13 Gray, 239 ; *Crease* v. *Babcock,* 23 Pick. 334

No such question, however, arises in this case. No additional burden from which they had been exempted by the charter has been imposed upon this association by the Act in question, nor have they been deprived of any property or rights which had become vested in them under a legitimate exercise of the powers granted. The corporation paid no *bonus* for the charter, and is liable to no taxation which is not imposed on other corporations. Nor can we see the analogy between the power to conduct a lottery, and the exclusive right to construct a bridge or ferry, and exact tolls. The one is a license to do something immoral in itself without any compensation to the public, while the other possesses all the elements of a contract by which money is to be expended in building the bridge or ferry for the use and benefit of the public on the one part, in consideration of tolls to be paid on the other part. There is, however, an analogy between the right to conduct a lottery and the right to sell liquor ; in that, both are mere permits, revocable at the will of the State ; and the authorities before cited establish, that it makes no difference whether a *bonus* or tax has

been paid for the privilege for a time unexpired or not. Also see *Fell* v. *People*, 42 Md.; 61 Mo.; 69 Ill. 80; Cooley, 595, 596.

Whenever the Legislature sees fit to exercise its paramount duty to take care of the health, happiness, morals and welfare of the community, it has the right, and it is its duty, to withdraw the obnoxious grant. Where the privilege has been paid for, for a time yet unexpired, it would be nothing more than equitable and just, that a ratable compensation should be made, but it would seem that it is not recoverable as a matter of right any more than in other cases of the abatement of a public nuisance. But that question does not arise in this case and is not decided.

There is error. Judgment should have been given for the State upon the special verdict. This will be certified, &c.

PER CURIAM.                    Judgment reversed.