ELIZABETH CITY WATER AND POWER COMPANY v. CITY OF ELIZABETH CITY.

(Filed 1 October, 1924.)

1. **Courts — Pleadings — Jurisdiction — Orders—Answers—Discretion of Court—Statutes.**

    Under the provision of C. S., 534, 537, the Superior Court judge may, in his sound discretion, allow defendant's motion, after answer filed, to make the complaint more definite and certain as to the grounds upon which the relief is sought, especially when it affects book records and other written data easily accessible to the plaintiff.

2. **Same—Jurisdiction—Cause of Action.**

    Objection to the jurisdiction of the court or that the complaint does not allege facts sufficient to constitute a cause of action is not waived by proceeding with the trial, and may be taken advantage of in the Supreme Court, or this Court may act thereon *ex mero motu* and dismiss the action.

3. **Contracts — Constitutional Law — Vested Rights—Statutes—Amendatory Statutes—Corporations—Charters.**

    The provisions of Art. VIII, sec. 1, of the State Constitution, affecting the organization of corporations, and specifically providing that all "such laws or special acts may be altered from time to time or repealed," etc., enters into every charter taken out or corporation formed thereunder, and any such corporation may not complain when a statutory repeal or amendment has been made, on the ground that it works a hardship on ·

it or impairs the value of its property, unless vested rights have been prior acquired by it which have been impaired or destroyed by the repealing or amendatory act complained of.

**4. Same — Municipal Corporations — Cities and Towns — Water Companies—Competition—Constitutional Law.**

An incorporated water company obtained a franchise from an incorporated city, and contracted with the city for furnishing it and its inhabitants a water supply for a term of years. Thereafter the city, by complying with the provisions of a statute authorizing it, undertook to furnish its own system such as water, sewerage, electric lights, etc., with certain charges therefor, and to take care of a bond issue, therefor, interest thereon, etc. *Held,* the plaintiff could not restrain the defendant city from operating its own water system upon the ground that it would create an unfair competition under circumstances that would destroy or impair the value of its property.

**5. Same—Navigable Streams—Prescriptive Rights—Vested Rights.**

A water company cannot acquire a prescriptive right to the use of a dam on a navigable stream for its supply of water to its customers, and it may not prevent a city from the exercise of its valid right to enter into competition in supplying its own inhabitants, upon the ground that it would necessarily have to use the water of the navigable stream in like manner, and that the plaintiff had an exclusive right by prescription to such waters at a point where such use was alone available.

**6. Same—Statutes—Amendments.**

Where a city has entered into a contract authorized by statute to contract with a water company for its water supply, etc., the city may, after the expiration of this contract, in pursuance of authority conferred by statute erect and maintain its own water plant for this purpose, without impairing any vested right of the water company, under Art. I, sec. 10 of the Federal Constitution, or under the Fourteenth Amendment thereof known as the due process clause, or under Art. I, sec. 7, of the State Constitution prohibiting the taking of private property for a public use except by the law of the land. The question of whether during the life of the contract with a water company, the city could so act under a statute authorizing it, and the question of monopolies, discussed by CLARKSON, J.

APPEAL by plaintiff from *Devin, J.,* at March Term, 1924, of PASQUOTANK.

The facts as set forth by plaintiff, appellant, are as follows:

The plaintiff was chartered in 1903 for the purpose of supplying water and power, and then acquired a 60-year franchise that in 1902 had been granted by Elizabeth City. This franchise, granted in 1902, received legislative recognition, sanction, and ratification in 1903, and has municipal recognition by express contract, acquiescence, and estoppel.

The plaintiff has a modern and efficient water system, with nearly thirteen miles of mains in service, a plant with a capacity of 1,440,000

gallons per day, while the average daily consumption of water in Elizabeth City is only 400,000 gallons, the investment being $173,577.68.

The plaintiff serves the city, its inhabitants, and persons beyond the city limits, especially those living within a radius of a mile beyond the boundaries. The bill alleges that the city has passed the ordinances authorizing a municipal bond issue of $800,000 to provide for the construction of city electric, water, and sewer plants. It is stated that the bond ordinance is invalid, in that the purpose is not in fact a public purpose, and that the city did provide in accordance with the requirements of the Municipal Finance Act, but did acts prohibited by the State and Federal constitutions. The plaintiff states that the only practicable and available source of water supply is Knobb's Creek, which the company, from the beginning of its operations in 1903, as well as did the predecessors of the company, the rights of which predecessors the company acquired, have made use of said stream.

The company has long had a dam across the creek, and in 1919 obtained from the Legislature of North Carolina permission to erect a permanent dam. The city has prepared, introduced and caused to be passed a bill repealing the company's right to dam the stream, the act giving the city right to construct a dam across Knobb's Creek.

It is stated that the subsoil of Elizabeth City is such that the laying of duplicate water mains and pipes will cause great damage and injury to the distributing system of the plaintiff company and prevent it from serving its customers, and from carrying out its contractual and franchise obligations. The bill states that the defendant city has prepared and caused to be passed by the Legislature a city charter, which authorizes the city to construct and operate a municipal water system, and that by said charter is effected a studied and consistent discrimination against the plaintiff, amounting to destruction and confiscation, and in favor of the municipal water system.

The requirements that all property holders pay for the installation and cost of connection with the pipes of the municipal plant, and the restriction against the taking-up of paving when once laid, are particularly complained against.

The bill of complaint states that the plaintiff company is a large taxpayer; that the issuance of said bonds by the city, and dedication of the proceeds to the purposes intended, with no requirement that the rates charged shall pay all operating expenses, allow for depreciation and provide for the payment of the principal and interest, violate the rights of the plaintiff, which company is under regulation by the Corporation Commission of North Carolina, and the municipal plant by law made exempt from regulation.

It is charged that the issuance of the bonds without a vote of the people is in violation of the State Constitution, as construed by the highest State Court at the time of the organization of plaintiff and the issuance of its securities.

The bill prays that the issuance and sale of the bonds be enjoined; that the construction of the dam across Knobb's Creek and the use of the stream as a source of supply be denied; that damage to the pipes and mains be prevented; that the levying of the taxes to pay the principal and interest of the bonds be prohibited; that the inhabitants and property holders of Elizabeth City be not required to use the municipal water supply, and that the city be prohibited from using any unfair methods of competition. General relief is also prayed.

The bill of complaint was filed on 4 February, 1924. As part of the bill, there were filed seven exhibits. The defendant answered on 23 February, 1924. On 27 February, 1924, the defendant gave notice that it would on 17 March, 1924, move to dismiss the bill, on the ground of insufficiency of facts to constitute a cause of action; and on 27 February, 1924, the defendant gave a second notice that it would, on 8 March, 1924, move for an order requiring the plaintiff to file a bill of particulars and to make the bill more specific. The motion itself, as made on 8 March, 1924, is contained in the record.

The court heard the motion to file particulars and to make more specific, on 18 March, 1924, and granted the same. Immediately thereafter, on the same day, the court heard the motion to dismiss, with the amendments and particulars considered as made and filed, and thereupon passed an order dismissing the bill. The final judgment dismissing the bill followed, the court "being of the opinion that the complaint, as so amended and amplified, does not state facts sufficient to constitute a cause of action, and that the action should be dismissed." The plaintiff appealed from this judgment.

The facts set forth by defendant, appellee, are as follows:

The plaintiff, Elizabeth City Water and Power Company, was duly incorporated under the laws of North Carolina on 25 February, 1903, for a period of sixty years. On 6 October, 1902, the respondent city attempted to grant to C. M. Ferebee and his assigns a franchise to furnish to said city and its inhabitants an adequate supply of pure, potable and wholesome water, and an efficient, sanitary sewerage and waterworks in said city, and to use the streets and public grounds of said city for that purpose.

On 18 February, 1903, the General Assembly of North Carolina, by private act, authorized the city, upon ratification by popular vote, to contract with the said Ferebee and his assigns for electric lights, water, sewerage, and gas, or for any of same, for such time, not exceeding

thirty years, and upon such terms and conditions, and for such consideration, in each case, as the board of aldermen of said city might deem just and expedient.

Said act further empowered the city to agree with said Ferebee or his assigns that no pipe, etc., for a water supply or sewerage should, under the authority of said city, be placed in, under, or across any of the streets, etc., of said city at any time within ten years from 1 May, 1903, which in any way should interfere with the pipes, etc., of said Ferebee or his assigns, laid for the purpose of performing any contract made under the authority of said act.

On 4 March, 1903, the General Assembly, by private act, further empowered the city, upon prescribed conditions, to erect public utilities of its own. This act of 4 March provided that "No contract or agreement made at any time hereafter by the corporation of Elizabeth City, under the authority contained in the aforesaid act (private act of 18 February, aforesaid), shall, during the period or term for which said contract or agreement shall be made, be in any manner terminated or impaired, or by virtue of any power or authority vested in the board of town aldermen of Elizabeth City by the provisions of this act."

On 1 June, 1903, the respondent city entered into a contract with the complainant, as the assignee of said Ferebee, to furnish to the city and its inhabitants an adequate supply of good, wholesome, potable water, suitable for all domestic purposes.

This contract, as will appear from the terms thereof, expired by limitation on 31 May, 1913. Since the expiration of this contract no new contract has been entered into between said parties, though the respondent city and its inhabitants have continued to use, so far as possible, water furnished by the complainant, upon the terms agreed or fixed by appropriate authority. No further contract between said parties is set out in the record. Nor does the complainant allege with particularity any facts constituting a renewal of said contract; complainant contenting itself with the contention that a renewal of said contract for a like period of time is to be presumed from the continuance of service after 31 May, 1913.

On 5 September, 1922, the city, in conformity with the Municipal Finance Act, passed by the General Assembly of North Carolina at its sessions of 1919 and 1921, duly passed two ordinances—one providing for the issue of bonds in the sum of $550,000 to provide a combined water, electric light and power system for said city, and the other providing for the issue of bonds in the sum of $250,000 to provide a sewerage system for said municipality and its inhabitants. These two ordinances, as shown by the record, were, under the authority of said Municipal Finance Act, subsequently consolidated by ordinance of

9 October, 1922. Thereupon this suit was instituted, seeking the relief prayed in the bill of complaint.

A brief resumé of the history of the litigation, of which this case forms a part, is neither inappropriate nor amiss. This is especially true, because the decisions and opinions heretofore rendered in the Federal courts upon the identical questions here raised are respectfully cited in support of the correctness of the ruling of the court below.

On 15 December, 1922, John T. Hill and others, alleging themselves to be bondholders of Electric Light Company of Elizabeth City, filed in the United States District Court a bill of complaint, on the equity side of the docket, attacking the same, or substantially the same, acts of the defendant city which are under attack in this case, and seeking injunctive relief. This cause was heard by the *Hon. H. G. Connor,* District Judge, upon defendant's motion to dismiss, and an opinion rendered, which appears in *John T. Hill et als. v. Elizabeth City et al.,* 291 Fed Rep., 194.

On the same day said suit was instituted another bill of complaint was filed in the same court and against the same defendants, the city and its mayor and aldermen, by Elizabeth City Water and Power Company, one of the allied corporations. This suit followed the same course as the Hill suit and met with the same decision by the learned judge of the District Court. Subpœnas and copies of the bills of complaint in these cases were caused to be served upon the mayor and aldermen while engaged in opening bids for bonds, after advertisement thereof under the provisions of the Municipal Finance Act.

From *Judge Connor's* decision the complainants appealed to the Circuit Court of Appeals, which court, on 10 March, 1924, affirmed the decision of the District Court, dismissing the suits. *Hill v. Elizabeth City,* 298 Fed., 67; *Elizabeth City Water and Power Co. v. Elizabeth City,* 298 Fed., 70.

Almost simultaneously with the institution of these suits in equity, the Elizabeth City Sewerage Company filed its petition with the State Corporation Commission, seeking permission to abandon and discontinue its sewer service in Elizabeth City. That petition, after being heard upon evidence and argument, is still pending. The next suit brought is the one at bar, in which the record is almost identical with those in the equity suits in the Federal courts.

The court below rendered the following judgment:

"This cause coming on to be heard this 18 March, 1924, having been by consent continued from 17 March, upon defendant's motion to dismiss the action, and being heard in open court, after the hearing upon defendant's preliminary motion to make the complaint more specific and definite, which motion was allowed as therein requested, and as

appears from the record, and being heard upon the complaint, as made more definite in compliance with said motion, and as amended in the particulars requested by counsel for plaintiff, and upon the documents and other paper-writings referred to in the complaint and motion, and offered by plaintiff in accordance with said order requiring it to make the complaint more definite, and the court being of the opinion that the complaint, as so amended and amplified, does not state facts sufficient to constitute a cause of action, and that the action should be dismissed: It is therefore ordered, decreed and adjudged by the court that this action be and the same is hereby dismissed, and that the defendant recover its cost, to be taxed by the clerk of the court."

To the foregoing judgment plaintiff excepted, assigned errors, and appealed to the Supreme Court.

(1) The plaintiff excepted for that the court allowed the motion made by the defendant to make the complaint more specific, as set out in the said motion and order filed.

(2) The plaintiff excepted for that the court sustained the motion made by the defendant to dismiss the action and signed the judgment as set out in the record.

*Aydlett & Simpson and Maloy, Brady, Howell & Yost for plaintiff.*
*J. B. Leigh, McMullen & LeRoy, and Thompson & Wilson for defendant.*

CLARKSON, J. From the oral argument of this case we were impressed with the idea that perhaps the city of Elizabeth City had violated some legal rights of the plaintiff, the Elizabeth City Water and Power Company. From a thorough examination of the record, we are of the opinion that the defendant, city of Elizabeth City, was in its legal rights, and under the law had full power and authority to do all the acts and things complained of by the plaintiff.

The plaintiff's complaint, stripped of all technicalities, in a "nutshell," is that the defendant, the city of Elizabeth City, is about to start a rival business by establishing a water system, etc., and as a consequence the plaintiff's business will be seriously affected; that the competition will be unfair, in that the municipal-owned water system will be free of taxes and the plaintiff will have to pay taxes; that the plaintiff is under regulation by the Corporation Commission, and the municipal plant will be free from regulation; that the discrimination will amount to destruction and confiscation; that at Knobb's Creek, where plaintiff obtains its supply of water, it fears defendant will interfere with its water rights. The plaintiff has invested large sums in its plant, and that this will deteriorate and become less valuable. The plaintiff

charges that it will suffer irreparable damage to its property, and asks the court to interfere by injunction. This the court below refused to do, and in this we think there was no error.

If the contention of plaintiff was sustained, under the facts and circumstances of this case, it would be practically impossible for a municipality ever to own a utility where a privately owned one then existed. Every rival business in every-day life affects its competitors, sometimes destructively, by having cheaper rent, better location, more efficient help, better marketable product, etc. How far the city of Elizabeth City should imparl, looking towards purchase before erecting a new plant, we have nothing to do. We can only declare the law.

In discussing the contentions of plaintiff *seriatim,* we feel that we are doing what has already been substantially done by *Hon. H. G. Connor,* United States District Judge, and for many years a member of this Court. In the *Hill case, supra,* brought by the bondholders, *Judge Connor,* in a very able, learned and carefully prepared opinion on almost the identical facts, dismissed the bill in equity filed by Hill and others. On appeal, the Circuit Court affirmed the decision. *Judge Charles A. Wood* (United States Circuit Judge, formerly on the Supreme Court bench of South Carolina) wrote the opinion. This opinion was concurred in by *Circuit Judge Rose* and *District Judge Webb.*

*Judge Wood,* in closing his opinion, said: "The court is constrained to say that the loss which a failure of the parties to agree will entail ought to be averted. There is an amount of money, as everybody knows, which expresses the value of the existing plants to the municipality for use in its own construction. The hope is indulged that some one will have the wit to find that amount, even in the cloud of feeling, and make the rightness of it so plain that it will be paid and accepted."

This much-contested and irreconcilable conflict now comes to this Court.

Plaintiff's first exception is to the court below making an order, upon motion of defendant, that plaintiff file a bill of particulars and make its complaint more specific. This motion was made after defendant filed answer. The complaint was filed on 4 February, 1924. Defendant filed its answer on 23 February, 1924. The motions were made on 27 February, 1924, and on 8 March, 1924, and continued to 18 March, 1924, and the motions allowed on that date.

The latter part of C. S., 534, is as follows: "The court or judge may order a further account when the one delivered is defective, and may, *in all cases, order a bill of particulars of the claim of either party to be furnished."* (Italics ours.)

C. S., 537, is as follows: "If irrelevant or redundant matter is inserted in a pleading, it may be stricken out, on motion of any person

POWER CO. *v.* ELIZABETH CITY.

aggrieved thereby; but this motion must be made before answer or demurrer, or before an extension of time to plead is granted. *When the allegations of a pleading are so indefinite or· uncertain that the precise nature of the charge or defense is not apparent, the court may require the pleading to be made definite and certain by amendment.*" (Italics ours.)

A motion of this kind was allowed in *Bristol v. R. R.,* 175 N. C., p. 509, some time after answer was filed. The better practice is to make the motion before demurrer or answer is filed, and the motion should be made in apt time. In *Allen v. R. R.,* 120 N. C., p. 550, it is said: "It is too late after demurrer or answer. *Stokes v. Taylor,* 104 N. C., p. 394." Although the opinion seems to hold that it can be done after answer is filed. A careful reading of the *Stokes case, supra,* does not sustain the position. We think this matter was in the sound discretion of the court below.

It is apparent that whatever action might have been taken by the city, and which might have been alleged as constituting or as an impairment of contract obligations, or an invasion or violation of property rights, must have been a corporate act and thus appear of record. It was clearly possible and, in fact, easy for plaintiff to set forth, by proper incorporation or specific reference, those records or documents which constitute the official action granting, creating, impairing or violating the plaintiff's rights of property.

The motion made by defendant, set forth with particularity, was a request for all agreements, corporate resolutions, ordinances, writings, legislative acts, etc., on which the allegations of the complaint were based. The plaintiff substantially complied with this request. The allegations in the complaint were all in substance based on writings, legislative acts, ordinances, resolutions of the board of aldermen, etc. It was to require frankness and openness in plaintiff's claim for relief, and matters in its knowledge and easily produced. We can see no error in the rulings of the court below, and this exception cannot be sustained. There was no gross abuse of the discretion. *Barbee v. Davis,* 187 N. C., p. 78.

The second exception: "The plaintiff further excepted for that the court sustained the motion to dismiss, and rendered judgment dismissing the complaint."

C. S., 518, is as follows: "If objection is not taken, either by demurrer or answer, the defendant waives the same, *except the objections to the jurisdiction of the court and that the complaint does not state facts sufficient to constitute a cause of action.*" (Italics ours.)

We think it well settled, under our practice and procedure, that objection to the jurisdiction of the court and that complaint does not state facts constituting a cause of action are not waived and can be taken advantage of at any time, even in the Supreme Court, in writing or *ore tenus.* The Court may, *ex mero motu,* dismiss when lack of jurisdiction or when complaint fails to state a cause of action.

The main contest narrows down: Does the complaint and record evidence, on which it is mainly based, in substance, constitute a cause of action?

·Article VIII, section 1, of the Constitution of North Carolina, in regard to corporations other than municipal, is as follows: "No corporation shall be created nor shall its charter be extended, altered or amended by special act, except corporations for charitable, educational, penal, or reformatory purposes that are to be and remain under the patronage and control of the State, but the General Assembly shall provide by general laws for the chartering and organization of all corporations and for amending, extending and forfeiture of all charters, except those above permitted by special act. *All such laws and special acts may be altered from time to time, or repealed;* and the General Assembly may at any time, by special act, repeal the charter of any corporation."

The above article was an amendment of the Constitution of 1868 and ratified at the polls, and went into effect 10 January, 1917.

In the Constitution of 1868 was the following: "Corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes; and in cases where, in the judgment of the Legislature, the object of the corporation cannot be attained under general laws. *All general laws and special acts passed pursuant to this section may be altered from time to time, or repealed.*"

"The purpose and effect of this section is to enable the State to control, modify or repeal corporate powers, thus avoiding the effect of the doctrine announced in *Dartmouth College v. Woodward,* 4 Wheat. (U. S.), 518. The language of this section is read into charters issued to corporations since its adoption (1868), so that the Legislature has a right to amend or repeal from time to time any and all rights thereby conferred. *S. v. Cantwell,* 142 N. C., 604, construing the charter of the Wilmington Fire Company, ratified 8 March, 1869. All acts of incorporation, subsequent to this section and partaking of the nature of contracts between the State and the incorporators, are granted and taken in reference to this power of alteration or repeal by the Legislature, so that this power of change or repeal is a part of the contract itself. *S. v. Morris,* 77 N. C., 512; *Power Co. v. Whitney Co.,* 150 N. C., 31. Notwithstanding a constitutional provision of this character, the power

of the Legislature cannot be unlimited and arbitrary. Where, under a power in a charter, rights have been acquired and become vested, no amendment or alteration of the charter can take away the property or rights which have become vested under a legitimate exercise of the powers granted. *S. v. Morris,* 77 N. C., 512." Connor & Cheshire's Const. of N. C. (Anno.), pp. 339, 340, 341.

Article I, section 7, Constitution of North Carolina, is as follows: "No man or set of men are entitled to exclusive or separate emoluments or privileges from the community but in consideration of public service." Section 31 is as follows: "Perpetuities and monopolies are contrary to the genius of a free State, and ought not to be allowed."

In *Thrift v. Elizabeth City,* 122 N. C., p. 35, it was held: "Those provisions of the ordinance granting the *exclusive* privilege to construct and maintain water-works within the corporate limits of the town, and the *exclusive* use of its streets, alleys, sidewalks, public grounds, streams and bridges come within the condemnation of section 31 of Article I of the Constitution of this State, which declares that 'Perpetuities and monopolies are contrary to the genius of a free State, and ought not to be allowed.' . . . All authorities hold that no such exclusive privilege can be granted by a municipal corporation without express legislative authority, and this of itself would settle the case at bar; but we feel compelled to go further and say that, while the point is not now directly before us, we do not wish to be understood as conceding the power of the Legislature itself to grant such exclusive privileges. In our opinion, they come directly within the meaning of monopolies, as construed in the light of our institutions, the genius of our people, and the spirit of our laws. We are not inadvertent to some decisions to the contrary in other jurisdictions, but in all of them, where the power is admitted, it is strictly construed." *Robinson v. Lamb,* 126 N. C., p. 492; McQuillan on Municipal Corporations, vol. 1, sec. 1633, and cases cited; *Durham v. Public Service Co.,* 182 N. C., p. 333, affirmed by Supreme Court of United States, 261 U. S., p. 149.

In *Simonton v. Lanier,* 71 N. C., p. 503, it was contended that the charter of the Bank of Statesville was given the special privilege to lend money at a higher rate than the general State law. Referring to Article I, sections 7 and 31, *supra, Bynum, J.,* said: "The wisdom and foresight of our ancestors is nowhere more clearly shown than in providing these fundamental safeguards against partial and class legislation, the insidious and ever-working foes of free and equal government."

With these fundamental safeguards in the Constitution of 1868, the plaintiff entered into the water-system enterprise now under consideration.

The plaintiff is a corporation, organized under the laws of North Carolina on 25 February, 1903, and alleges:

"In the year 1902 franchises for the construction and operation of a water system were granted by the city of Elizabeth City to one C. M. Ferebee and his assigns, which franchise grants, running for a period of sixty years, were acquired and are now held by the plaintiff corporation; that by chapter 99 of the Acts of 1903 of the General Assembly of North Carolina the defendant city was authorized to contract with the said C. M. Ferebee and his assigns for water service for not longer than thirty years, subject to submission to and ratification by the voters of said city; that by a majority the voters of said city ratified the proposed contract for water service at an election held on 13 April, 1903, and that subsequently a contract, dated 1 June, 1903, was entered into; that the plaintiff corporation immediately began the construction of its plant and the laying of its mains." It has built and operated its present water system.

The contract entered into between plaintiff and defendant expired by limitation on 31 May, 1913. Since that time the contract has not been extended.

The General Assembly of North Carolina, on 31 January, 1923 (Private Laws, ch. 15, secs. 122 and 129, inclusive), passed an act giving Elizabeth City (inside or outside the corporate limits) the authority to construct and operate municipal utilities, including a water system.

It is held in certain jurisdictions that when the contract has not expired, a municipal corporation cannot during its life become a competitor.

The case of *Westminster Water Co. v. Westminster*, 64 L. R. A. (Md.), 630, decided in 1904, holds void a perpetual contract for the water supply of the defendant city. The opinion contains a brief summary of some of the cases deciding what are reasonable periods for such contracts. It thus shows that "In the case of *New Orleans Waterworks Co. v. Rivers*, 115 U. S., 674, a contract for fifty years was sustained; in *Walla Walla v. Walla Walla Water Co.*, 172 U. S., 1, a contract for twenty-five years was sustained; in *Vicksburg Waterworks Co. v. Vicksburg*, 185 U. S., 65, a contract for thirty years was held not unreasonable." The case of *City of Vincennes v. Citizens Gas Light Co.*, 132 Ind., 114, expresses this well-established principle by saying: "A city has power to contract for a supply of gas or water for a stated period of time extending beyond the tenure of office of the individual members of the common council making such contract. . . . We cannot say that twenty-five years is an unreasonable time for which to contract for a supply of light or water." Pond on Municipal Control of Public Utilities, p. 84; *Owensboro v. Owensboro*, 243 U. S., p. 166.

The most recent case of unexpired contract relationship is *Superior Water, Light and Power Co. v. City of Superior,* U. S. Supreme Court Reporter (15 December, 1923), p. 86. *Mr. Justice McReynolds,* delivering the opinion, says: "The integrity of contracts—matter of high public concern—is guaranteed against action like that here disclosed by section 10, Article I of the Federal Constitution: 'No State shall . . . pass any . . . law impairing the obligation of contracts.' It was beyond the competency of the Legislature to substitute an 'indeterminate permit' for rights acquired under a very clear contract. *Vicksburg v. Vicksburg Waterworks Co.,* 206 U. S., 496; 27 Sup. Ct., 762; 51 L. Ed., 1155; *Detroit United Ry. v. Michigan,* 242 U. S., 238, 253; 37 Sup. Ct., 87; 61 L. Ed., 268." The decisions are collected in that opinion and need not be recited here.

This question does not arise here, as the time limit of the contract fixed and agreed upon in writing has expired.

McQuillan on Municipal Corporations, vol. 4, sec. 1779, says: "It is well settled that the Legislature, where not forbidden by the Constitution, has power to authorize a municipal corporation to own and operate any public utility such as is generally owned and operated in a city by public-service corporations. . . . A grant by the Legislature to villages of the power to construct and operate waterworks held not in excess of its power merely because of the existence of a private corporation engaged in the same business which had obtained its franchise under a legislative act providing for the creation of waterworks companies in towns and villages. *Skaneateles Waterworks Co. v. Skaneateles,* 161 N. Y., 153; 55 N. E., 562; 4 L. R. A., 687; rehearing denied in 161 N. Y., 658; 57 N. E., 1124; affirmed in 184 U. S., 354; 22 Sup. Ct., 400; 46 L. Ed., 585." See, also, *Knoxville Water Co. v. Knoxville,* 200 U. S., 22; *Norfolk County Water Co. v. City of Norfolk* (Fourth Circuit), 246 Fed., 650; *City of Joplin v. Southwest Missouri Light Co.,* 191 U. S., 150; *Helena Waterworks Co. v. Helena,* 195 U. S., 383. In the two last-cited cases it was held a city had the right to construct and operate its own plant before its contract with the public-service corporation has expired. There was nothing in the contract with the public-service corporation that provided that the city would not erect its own plant.

Ohio has its constitutional provisions similar to ours.

In *Hamilton Gas Light and Coke Co. v. Hamilton,* 146 U. S. Rep., 258, *Mr. Justice Harlan,* delivering the opinion of the Court, in sustaining the right of the city of Hamilton to erect its own gas works under circumstances similar to those of the instant case, amongst other things, said: "This conclusion is required by other considerations. By

the Constitution of Ohio, adopted in 1851, it was declared that 'no special privileges or immunities shall ever be granted that may not be altered, revoked, or repealed by the General Assembly'; that 'the General Assembly shall pass .no special act conferring corporate powers'; and that 'corporations may be formed under general law, but all such laws may be from time to time altered or repealed.' Const.. Ohio 2, Art. I; par. 1, 2, Art. XIII. If the statute under which the plaintiff became incorporated be construed as giving it the exclusive privilege, so long as it met the requirements of law of supplying gas light to the city of Hamilton and its inhabitants by means of pipes laid in the public ways, there is no escape from the conclusion that such a grant, as respects at least its exclusive character, was subject to the power of the Legislature, reserved by the State Constitution, of altering or revoking it. This reservation of power to alter or revoke a grant of special privileges necessarily became a part of the charter of every corporation formed under the general statute providing for the formation of corporations. A legislative grant to a corporation of special privileges, if not forbidden by the Constitution, may be a contract; but where one of the conditions of the grant is that the Legislature may alter or revoke it, a law altering or revoking, or which has the effect to alter or revoke, the exclusive character of such privileges, cannot be regarded as one impairing the obligation of the contract, whatever may be the motive of the Legislature, or however harshly such legislation may operate, in the particular case, upon the corporation or parties affected by it. The corporation, by accepting the grant subject to the legislative power so reserved by the Constitution, must be held to have assented to such reservation. These views are supported by the decisions of this Court."

Plaintiff complains that it is regulated and the defendant unregulated. When it went into this business it had full knowledge of the Constitution and laws of this State, and bought out Ferebee and his assigns *cum onere*. In the regulation of its business it is protected by law.

In the regulation of this corporation its property cannot be confiscated. In *Bluefield Waterworks and Improvement Co. v. Public Service Commission*, 262 U. S., p. 679, it is held: "The return on investment which a public utility should be permitted to earn should be reasonably sufficient to assure confidence in the financial soundness of the utility, and should be adequate, under efficient and economical management, to maintain and support its credit and enable it to raise money necessary for the proper discharge of its public duties."

In *Springfield Gas and Electric Co. v. City of Springfield*, 257 U. S., p. 131, it is held: "Leaving free in the matter of charges a municipality

engaged in producing and selling electricity to private consumers, while making the rates of private electric companies subject to the approval of the State Public Utilities Commission, as is done by Illinois Public Utilities Act of 30 June, 1913, and Illinois Municipal Ownership Act of 20 June, 1913, does not deny to the private corporation the equal protection of the laws. A city council has no such interest in a municipally owned electric plant as to make it incompetent to fix the rates." ·

Plaintiff complains again that it pays tax and the municipally owned utility does not. When it bought the charter from C. M. Ferebee and made its contract with defendant, Elizabeth City, and invested its money, it knew this was the law, and it went into the business with full knowledge. Its contract has expired, and it cannot be heard to complain. We can see nothing in the contention of "acquiescence and estoppel." The allegation is unsupported by the written contract, which, on the record and argument was admitted, expired on 31 May, 1923. The fact that "the subsoil of Elizabeth City is such that the laying of duplicate water mains and pipes will cause great damage and injury to the distributing system," if this is a fact, plaintiff knew it when it made the investment, and cannot be heard to complain. In fact, the legislative act under which the ten-year contract was made has this provision:

"That the corporation of Elizabeth City is hereby authorized and empowered to agree with C. M. Ferebee, or his assigns, that no pipes, tubes or conduits for a water supply or for sewerage shall, under the authority of the said corporation, be placed in, under or across any of the streets, alleys, lanes or highways of said corporation, at any time within ten years from 1 May, 1903, which shall in any way obstruct, interfere with the location of or make necessary the removal or any change in the location of any pipes, tubes or conduits which may be placed by the said C. M. Ferebee, or by his assigns, in, under or across any of the streets, alleys, lanes or highways of the said corporation for the purpose of performing any contract made under the authority of this act: *Provided further,* that the privileges mentioned in this section shall not be granted unless the contract or contracts named in the preceding sections of this act are ratified by a majority of the qualified voters of Elizabeth City in the manner hereinbefore mentioned." Laws 1903, ch. 99 (18 February, 1903), sec. 6.

It appears that the intention was that when this act was voted on by the people, "For contract" or "Against contract," the contract was to be made, which was done—for ten years—although the board of aldermen was given discretion for time not exceeding 30 years.

On 4 March, 1903, the General Assembly, by private act, further empowered the city, upon prescribed conditions, to erect public utilities

of its own. This act of 4 March provided that "No contract or agreement made at any time hereafter by the corporation of Elizabeth City, under the authority contained in the aforesaid act (private act of 18 February, aforesaid), shall, during the period or term for which said contract or agreement shall be made, be in any manner terminated or impaired or by virtue of any power or authority vested in the Board of Aldermen of Elizabeth City by the provisions of this act."

The act (Private Laws 1903, ch. 99, sec. 1) provided: "That the corporation of Elizabeth City is hereby authorized and empowered to contract with C. M. Ferebee, or with his assigns, to furnish to said corporation electric lights, gas, both for illuminating and for fuel, water and sanitary sewerage system, or for any of them, for such time not exceeding thirty years, upon such terms and conditions, and for such consideration in each case, as the board of town aldermen of Elizabeth City may deem just and expedient." It contracted under this power for 10 years and the time has expired.

Plaintiff further alleges that defendant's charter is "A studied and consistent discrimination against plaintiff, amounting to destruction and confiscation and in favor of the municipal water system. The requirements that all property holders pay for the installation and cost of connection with the pipes of the municipal plant and the restriction against the taking up of paving when once laid, are particularly complained against." Sec. 123, Private Laws 1923, ch. 15, allows the city of Elizabeth City to install a system of sewerage and the lot owners to pay for installation, and a series of years given to make payment—20 per cent each year. In some municipalities, sewer tax is required. We see nothing unreasonable in this. In fact, this is customary, and like provisions are made in general and special acts and frequently the individual owner has to pay also for the water meter, sewer, gas and water connections, and, in paving districts, the sewer, gas, water, etc., are all required to be put down before the street is hard-surfaced, and often places are left for connections to be made. This is a sane and sensible police regulation, done in all modern, up-to-date cities, to keep the hard-surfaced pavements, frequently laid at great expense, from being torn up and destroyed. If this was not provided for, it would be hard on abutting owners, who usually pay most of this street improvement, and they may say that not doing this amounts to "destruction and confiscation" to us.

The next complaint is: "With no requirement that the rates charged shall pay all operating expenses, allow for depreciation, and provide for the payment of the principal and interest, violate the rights of the plaintiff," etc. This matter is one largely for, and must of necessity be

left to, the sound discretion of the municipal body, unless otherwise provided in the act. But section 136 of the act (Private Laws 1923, ch. 15, *supra*) seems reasonable and righteous:

"So much of the net revenue derived in any fiscal year from the operation of any of the aforesaid systems of said public utilities after paying all expenses of operating, managing, maintaining, repairing, enlarging and extending such enterprise or any of them, shall be applied, first to the payment of the interest payable in the next succeeding year on bonds issued for such enterprises or any of them, and next to the payment of the amount necessary to be raised by tax in such succeeding year for the payment of the principal of said bonds, and next to the payment of the principal or interest payable in the next succeeding year on any other bonds issued by said city: *Provided, however,* that should there be a loss in any fiscal year from the operation of said systems of public utilities or either or any of them, then said loss shall be paid out of profits derived in a following year or years before said profits shall be applied to the purposes aforesaid: *Provided further,* that nothing herein contained shall in any way conflict with or supercede the Municipal Finance Act of North Carolina."

The plaintiff states that "The only practicable and available source of water supply is Knobb's Creek, which the company from the beginning of its operations, in 1903, as well as did the predecessors of the company the rights of which predecessors the company acquired, have made use of said stream. The company has long had a dam across the creek, and, in 1919, obtained from the Legislature of North Carolina permission to erect a permanent dam. The city has prepared, introduced and caused to be passed a bill repealing the company's right to dam the stream, the act giving the city the right to construct a dam across Knobb's Creek."

It is conceded that Knobb's Creek is one of the boundaries of Elizabeth City and a navigable stream, emptying into the Pasquotank River, which empties in turn into Albemarle Sound and then into the Atlantic Ocean. Some years ago, the company constructed a pile and timber dam with sluice gate across Knobb's Creek, near the plaintiff company's intake. This was done to prevent the backing up of the brackish water from the river and to stop inflow of refuse and rubbish from sawmills and to provide necessary storage and settlement. Under chapter 10, Private Laws 1919, plaintiff was authorized to build a permanent dam across said creek under conditions prescribed by said act. This was not done. The Legislature, at its session in 1923 (5 February, 1923) Private Laws, ch. 243, some four years after, repealed this act. There is no suggestion in any official act alleged in the bill that the city intends to use Knobb's Creek as its source of water supply, except the legislative act giving it

the right. There is nothing in writing to show plaintiff's right to this "navigable stream." There is no legislative right given by the State or United States. It is public property. No condemnation by plaintiff is alleged, if under the charter it had the power. From the entire record, the plaintiff has used the water from a navigable stream, belonging to the sovereign, and sold it to the defendant city and its inhabitants and others, without any right in law so far as the record shows. Plaintiff seems to be a "squatter" on sovereign property, and the "take" is not exclusive, nor adverse, but permitted with no complaint by proper authorities. It used the public navigable stream and sold the public water without paying for it, now it complains that the Legislative branch of the Government had repealed, in 1923, the act of 1919, giving it a right to dam the stream, which plaintiff never did. To what extent the Legislature could give away a sovereign right, we are not now called upon to pass on. We do say that plaintiff should have no cause to complain in obtaining free public water all these years, transporting and selling it.

It was said in *Geer v. Water Co.,* 127 N. C., 353 (applying to non-navigable streams) : "This Court has repeatedly held that it requires the continuous and adverse use of an easement for 20 years to raise the presumption of a grant, and that even then the presumption extends only to the 'state and extent' of such user during said period." *Pugh v. Wheeler,* 19 N. C., 54.

It seems to be well settled that "There can be no prescriptive right to maintain or continue a material obstruction in a navigable stream." 29 Cyc., 310.

C. S., 7540, is as follows: "All vacant and unappropriated lands belonging to the State shall be subject to entry by any citizen thereof, in the manner hereinafter provided, *except,* (1) Lands covered by navigable waters," etc. *Bell v. Smith,* 171 N. C., p. 116.

In *S. v. Twiford,* 136 N. C., p. 608, it is said: "The whole matter is thus summed up by *Shaw, C. J.,* in *Attorney-General v. Woods,* 108 Mass., 436, 11 Am. Rep., 380 : 'If water is navigable for pleasure-boating it must be regarded as navigable water, though no craft has ever been put upon it for the purpose of trade or agriculture. The purpose of navigation is not the subject of inquiry, but the fact of the capacity of the water for use in navigation.' It would be a serious detriment to the public if water, capable of such usefulness as here, can be made private property by buying up the adjacent land. The control of such water belongs to the public and is not appurtenant to the ownership of the shore. It is not a case 'where the tail goes with the hide.' . . . Navigable waters are free. They cannot be sold or monopolized. They can belong to no one but the public and are reserved

for free and unrestricted use by the public for all time. Whatever monopoly may obtain on land, the waters are unbridled yet."

The case of *Cuyahoga River Power Co. v. City of Akron,* 240 U. S., p. 462, cited by plaintiff, is a different state of facts from the instant case. In that case *Mr. Justice Holmes,* writing the opinion, speaking of the allegations of the bill, says: "It alleges that the city does not intend to institute any proceedings against the plaintiff but intends to take its property and rights without compensation; that it is building a dam and has taken steps that will destroy the plaintiff's rights; that it is insolvent; that the purpose of the ordinance and certain statutes referred to is to appropriate and destroy those rights without compensation; that the defendant purports to be acting under the ordinance, and that in so acting it violates Article I, section 10, and the Fourteenth Amendment of the Constitution of the United States.

The plaintiff complains that "the bond ordinance is invalid in that the purpose is not in fact a public purpose, and that the city did provide in accordance with the requirements of the Municipal Finance Act, but did acts prohibited by the State and Federal Constitution," and "It is charged that the issuance of the bonds without a vote of the people is in violation of the State Constitution as construed by the highest State Court at the time of the organization of plaintiff and the issuance of its securities." It relies on Const. of N. C., Art. VII, sec. 7, which is as follows: "No county, city, town or other municipal corporation shall contract any debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same except for the necessary expenses thereof, unless by a vote of the majority of the qualified voters therein."

The contention of plaintiff is that in *Mayo v. Washington,* 122 N. C., p. 5 (1898—Electric Light Plant) and *Thrift v. Elizabeth City,* 122 N. C., p. 31 (1898—Waterworks), were held not a "necessary expense" and a vote of the people was necessary. In *Fawcett v. Mount Airy,* 134 N. C., 125 (19 December, 1903), these cases were overruled, and water and light were held to be a necessary expense. The *Fawcett case* has been followed time and time again, and it is well settled by the decisions of this State that water and lights are a "necessary expense." There has never been any question about sewerage not being a "necessary expense." On the record it appears that the defendant, in conformity with the Municipal Finance Act passed by the General Assembly of North Carolina in 1917 (ch. 138, Public Laws 1917) and amendments thereto (Public Laws 1919, chs. 49, 178, 285, 291, and Spec. Ses. 1921, ch. 106), passed ordinances providing for the issue of $800,000 bonds for the city to construct water, sewer and electric light system. Plaintiff

conceded that the doctrine of these cases was reversed on 19 December, 1903, by the decision in *Fawcett v. Mount Airy, supra,* but contends that such reversal of judicial decision cannot affect the law as it has been declared in the former decisions and which they contend became a part of their contract of 1 June, 1903. Plaintiff's contentions cannot prevail, its contract relied on expired on 31 May, 1913, and has not been renewed. It has been continued at will.

Speaking on this question, *Judge Woods,* Circuit Judge, in a clear and concise opinion, in the case of *Hill v. Elizabeth City,* 298 Fed., 67, *supra,* says: "The continuation of the service of the Light and Water Company and the acceptance of it by the city after the expiration of the express contract implied a contract of indefinite duration, terminable upon reasonable notice either by the city or by the company at such time and under such circumstances as may be consistent with the duty both owe to the inhabitants of the city. *Denver v. Denver Union Water Co.,* 246 U. S., 178, 190. A long time must pass before the municipal system will be in operation; and there is nothing before us warranting a conclusion that the municipality will not give due notice to the public-service corporations that their service is no longer desired."

Constitution United States, Art. I, sec. 10, in part, is as follows: "No state shall   .   .   .   pass any bill of attainder, *ex post facto* law, *or law impairing the obligation of contracts."*

The Fourteenth Amendment to the Constitution of the United States, in part, is as follows: "Sec. 1,   .   .   .   No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or *property, without due process of law;* nor deny to any person within its jurisdiction the equal protection of the laws."

Constitution of North Carolina, Art. I, sec. 17, is as follows: "No person ought to be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed or exiled, or in any manner deprived of life, liberty or *property but by the law of the land.* Const. 1868; Const. 1776; Decl. Rights, sec. 12; *Magna Carta* (1215), ch. 39 (1225), ch. 29."

Black's Constitutional Law (3 ed.), p. 596, says: "Vested rights are to be secured and protected by the law and a statute which divests or destroys such rights, unless it be due process of law, is unconstitutional and void."

These provisions are fundamental and should be carefully and jealously guarded.

We have treated only the main contentions of plaintiff, as set forth in its brief. We have gone carefully over the complaint, record and

statutes, and can find no infringement of these great constitutional provisions that it has invoked in this case. Under our government, municipalities have the right to own and operate water, sewerage and electric light systems. Defendant has a right to build these utilities under legislative authority, so far as it does no act prohibited by the Constitution or the law of the land. Municipal corporations have the same rights as individuals and private corporations, to battle for justice and equality of opportunity as they view it, in their sphere of uplift and endeavor, and equal rights should be given to all under the law.

For the reasons given, the judgment below is

Affirmed.