CAROLINA WATER SERVICE, INC. OF NORTH CAROLINA, APPELLANT v. THE TOWN OF ATLANTIC BEACH, A NORTH CAROLINA MUNICIPAL CORP.; THE COUNCIL OF THE TOWN OF ATLANTIC BEACH, NORTH CAROLINA, INCLUDING ALL MEMBERS OF THE COUNCIL OF THE TOWN OF ATLANTIC BEACH IN THEIR OFFICIAL CAPACITIES; CLAY DULANEY, IN HIS CAPACITY AS UTILITY DIRECTOR OF THE TOWN OF ATLANTIC BEACH; AND RODMAN LANCASTER, IN HIS CAPACITY AS MAYOR OF THE TOWN OF ATLANTIC BEACH, APPELLEES

No. COA94-829

(Filed 5 December 1995)

1. **Contracts § 190 (NCI4th)— extension of water service to town residents—no tortious interference with contract**

The trial court properly entered summary judgment for defendant town on plaintiff utility's claim of tortious interference with contract where there was no evidence that defendant intentionally induced plaintiff's water customers not to perform their contract with plaintiff and no evidence that defendant acted without justification, since defendant had the authority pursuant to N.C.G.S. § 160A-312 to extend its water lines to an annexed area when the water service being provided by plaintiff to the annexed area was no longer equal to the water service being provided by defendant to other areas within the municipal boundaries; defendant had no mandatory hook-up requirement; by offering water users in the area the option rather than the requirement to connect to defendant's water system at reduced fees, defendant was simply providing those users with the same opportunity as it had historically given to water users in other areas to which it had extended service; defendant's actions in reducing

the tap fee and waiving the impact fee would be justified as taken in furtherance of legitimate competition.

**Am Jur 2d, Interference §§ 1-9, 23, 27-32, 41.**

**Liability of third party for interference with prospective contractual relationship between two other parties. 6 ALR4th 195.**

**Punitive damages for interference with contract or business relationship. 44 ALR4th 1078.**

2. **Unfair Competition or Trade Practices § 39 (NCI4th)— construction of water lines by town—no unfair practice**

The trial court properly entered summary judgment for defendant town on plaintiff's claim of unfair trade practices based on defendant's construction of water lines and related activities, since defendant constructed its own water system for the annexed area in question pursuant to statutory authority, and, by offering water customers in the annexed area reduced fees for connection to the system, was simply treating those customers in the same manner as it had treated other new customers when extending lines in past annexations.

**Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices §§ 477, 492, 499, 500, 508.**

**Validity, construction, and application of state statute forbidding unfair trade practice or competition by discriminatory allowance of rebates, commissions, discounts, or the like. 41 ALR4th 675.**

3. **Estoppel § 25 (NCI4th)— providing water service—statements in annexation ordinance—statements by mayor no equitable estoppel**

The trial court properly entered summary judgment for defendant town on plaintiff's equitable estoppel claim when plaintiff contended that certain language in annexation ordinances and statements made by the town mayor in 1981 led it to believe that it possessed an exclusive right to provide water service within an annexed area and that it relied upon that belief, but the language in the ordinances was required by statute to insure that residents of the area to be annexed would have access to comparable water service; it in no way served as a promise to be rightfully relied upon that defendant would not in the future con-

struct its own water lines within the annexed area or that plaintiff had the exclusive right to furnish water service there; and statements allegedly made by the mayor were not binding on defendant town, as there was no evidence that the statements were ever expressly ratified by the town council.

**Am Jur 2d, Estoppel and Waiver §§ 26-52.**

**Application of doctrine of estoppel against government or governmental agencies. 1 ALR2d 338.**

**Comment Note.—Quantum or degree of evidence necessary to prove an equitable estoppel. 4 ALR3d 361.**

**Doctrine of apparent authority as applied to agent of municipality. 77 ALR3d 925.**

Appeal by plaintiff from order entered 29 March 1994 by Judge James R. Strickland in Carteret County Superior Court. Heard in the Court of Appeals 19 April 1995.

*Hunton & Williams, by Edward S. Finley, Jr., and James L. Hunt for plaintiff-appellant.*

*Ward and Smith, P.A., by Kenneth R. Wooten and Cheryl A. Marteney; Bryant & Stanley, by Richard L. Stanley, for defendant-appellees.*

MARTIN, John C., Judge.

Plaintiff Carolina Water Service, Inc., of North Carolina is a public utility company authorized by the North Carolina Utilities Commission to furnish water service in portions of Carteret County, North Carolina. The areas served by plaintiff include areas located within the town limits of the Town of Atlantic Beach which had been annexed by the Town in 1987 and 1988. On 18 November 1992, plaintiff brought this civil action seeking injunctive relief and damages against the Town of Atlantic Beach and the individual defendants in their official capacities upon allegations of, *inter alia*, tortious interference with contract, unfair practices and equitable estoppel. These claims were based on the Town's intent to construct and provide a water utility system that would duplicate the plaintiff's water system serving the annexed areas of Atlantic Beach. Plaintiff alleged that immediate and irreparable harm would result to it from the implementation of such a system. Defendants answered, denying the mate-

rial allegations of the complaint and asserting, as affirmative defenses, that defendant Town is exempt from the provisions of Chapter 62 of the North Carolina General Statutes relating to public utilities, is exempt from the provisions of Chapter 75 of the General Statutes relating to unfair and deceptive practices, and is authorized pursuant to Chapter 160A of the General Statutes to construct and operate water utilities for its residents.

Following discovery, the parties filed cross-motions for summary judgment. Briefly summarized, the materials before the trial court showed that prior to 1988 plaintiff had entered into contracts to provide water service to Saw Grass Condominiums (now Dunescape Villas Condominiums), Island Beach and Racquet Club, Coastal Mobile Estates, and several hundred individual homeowners, all of which were located outside the then corporate limits of Atlantic Beach. Pursuant to annexation ordinances dated 2 October 1987, 2 February 1988, and 19 September 1988, the Town annexed the areas served by plaintiff's water system. At that time, plaintiff was providing water service comparable to the water service the Town was providing to users already within its municipal boundaries. The annexation ordinances stated that since comparable service was being provided by plaintiff within the annexed area, the Town would not be required to duplicate plaintiff's service and extend water and sewer lines to the annexed area.

In 1992, the Town added water softener and fluoridation to its water system, neither of which were provided by plaintiff's system. On 16 April 1992, after complaints regarding the water service provided by plaintiff and a petition from residents in the annexed area requesting that the Town extend water service to them, the Town's Board of Commissioners voted to furnish water service to the annexed area. The Town planned to install its new water lines parallel to plaintiff's existing lines. The Town also offered an early sign-up period during which time it would waive the $1,000.00 impact fee and reduce tap fees by $100.00. Similar reductions had previously been offered to residents in other areas of the Town upon annexation and extension of water service. At the time of the filing of this action, the Town had commenced implementation of its plans to install the new water lines, and at the time of the summary judgment hearing, installation of the new water lines had been completed and most of plaintiff's water customers in the annexed area had disconnected from plaintiff's water system and connected to the Town's new lines.

The trial court granted summary judgment in favor of defendants and dismissed all of plaintiff's claims. Plaintiff appeals.

---

G.S. § 1A-1, Rule 56(c) states that summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." "The party moving for summary judgment has the burden of establishing a lack of any triable issue of fact." *Varner v. Bryan*, 113 N.C. App. 697, 700, 440 S.E.2d 295, 298 (1994).

> The movant may meet this burden by proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim or cannot surmount an affirmative defense which would bar the claim. By making a motion for summary judgment, a defendant may force a plaintiff to produce a forecast of evidence demonstrating that the plaintiff will be able to make out at least a prima facie case at trial. (Citations omitted.)

*Id.* at 701, 440 S.E.2d at 298, *quoting Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989).

## I.

[1] We first consider plaintiff's claim for tortious interference with contract. In its complaint, plaintiff alleges that it had formed valid and binding contracts to furnish water service to Saw Grass Condominiums, Island Beach and Racquet Club, Coastal Mobile Estates, and several hundred individual homeowners in the annexed area, that the Town was aware of the existence of those contracts when it decided to provide water service there, and that when it offered the residents a discount to connect to its lines, they encouraged and induced those residents to breach their contracts with plaintiff, thereby "maliciously, intentionally, and unlawfully" interfering with those contracts. Plaintiff further alleges that "but for the unlawful and malicious interference of the defendants", the contractual relations between it and those residents would have continued without interruption.

In order to establish a claim for tortious interference with contract, a plaintiff must forecast evidence of the following elements:

First, that a valid contract existed between the plaintiff and a third person, conferring upon the plaintiff some contractual right against the person. Second, that the outsider had knowledge of the plaintiff's contract with the third person. Third, that the outsider intentionally induced the third person not to perform his contract with the plaintiff. Fourth, that in so doing the outsider acted without justification. Fifth, that the outsider's act caused the plaintiff actual damages. (Citations omitted.)

*Varner, supra,* at 701, 440 S.E.2d at 298, *quoting Childress v. Abeles,* 240 N.C. 667, 674, 84 S.E.2d 176, 181-82 (1954).

In the present case, plaintiff's forecast of evidence supports neither the third element necessary to support a claim for tortious interference with contract, i.e., that defendants intentionally induced plaintiff's customers in the annexed area not to perform their contracts with plaintiff, nor the fourth element, i.e., that defendants acted without justification. While there was evidence that in 1992 when the Town chose to extend its water lines into the annexed area, it gave water users in the area an opportunity to connect to its system at a reduced tap fee and no impact fee, the evidence did not show that defendant did so with intent to induce plaintiff's customers not to perform their contracts with plaintiff.

Under the public enterprise statute, G.S. § 160A-311 *et seq.,* a municipality is authorized to establish, operate and finance public enterprises. G.S. § 160A-311 defines "public enterprises" to include "[w]ater supply and distribution systems." The setting of water rates and fees, which is governed by G.S. § 160A-314(a), " 'is a matter for the judgment and discretion of municipal authorities, not to be invalidated by the court absent some showing of arbitrary or discriminatory action.' " *South Shell Inv. v. Wrightsville Beach, N.C.,* 703 F.Supp. 1192, 1206 (E.D.N.C. 1988), *quoting Town of Spring Hope v. Bissette,* 53 N.C. App. 210, 212-13, 280 S.E.2d 490, 492 (1981), *affirmed,* 305 N.C. 248, 287 S.E.2d 851 (1982). When a municipality engages in supplying water to its citizens, it owes the duty of equal service to consumers within its corporate limits, i.e., services must be provided on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation. *In re Annexation Ordinance,* 255 N.C. 633, 122 S.E.2d 690 (1961). In this case, when the water service being provided by plaintiff to the annexed area was no longer equal to the water service being provided by the Town to other areas within the municipal

boundaries, the Town had the authority, pursuant to G.S. § 160A-312, to extend its water lines to the annexed area. The overwhelming evidence showed that the Town had no mandatory hook-up requirement. By offering water users in the annexed area with the option, rather than requirement, to connect to the Town's water system at the reduced fees, the Town was simply providing those users with the same opportunity as it had historically given to water users in other areas to which it had extended service.

Even assuming, *arguendo*, that the Town's action in reducing the tap fee and waiving the impact fee should be considered as evidence of an intent on its part to induce plaintiff's customers not to perform their contracts with plaintiff, such actions would be justified as taken in furtherance of legitimate competition. *See Embree Construction Group v. Rafcor, Inc.*, 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992) ("interference with contract is justified if it is motivated by a legitimate business purpose, as when the plaintiff and the defendant, an outsider, are competitors"); *Madison Cablevision v. City of Morganton*, 325 N.C. 634, 649, 386 S.E.2d 200, 209 (1989) ("[m]unicipally owned and operated enterprises have been permitted to engage in head-to-head competition with privately owned companies"). For interference with a contract to be tortious, "plaintiff's evidence must show that the defendant acted without any legal justification for his action . . . ." *Varner*, 113 N.C. App. at 702, 440 S.E.2d at 298 (citations omitted). S*ee Smith v. Ford Motor Co.*, 289 N.C. 71, 221 S.E.2d 282 (1976). Accordingly, defendants were entitled to summary judgment in their favor as to plaintiff's claim for tortious interference with contract.

## II.

[2] Plaintiff also claimed defendants' actions constituted unfair practices. G.S. § 75-1.1(a) prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce . . . ."

There is no precise definition of "unfair" or "deceptive." Determining whether certain acts or practices are deceptive or unfair depends upon the facts of each case and the impact of those acts or practices on the marketplace . . . . Our courts have previously held that "[a] practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscruplous (sic) or substantially injurious to consumers . . . ." Further, a practice is deceptive if it "has the

capacity or tendency to deceive . . . . Proof of actual deception is unnecessary . . . ." (Citations omitted.)

*Ken-Mar Finance v. Harvey,* 90 N.C. App. 362, 365, 368 S.E.2d 646, 648, *disc. review denied,* 323 N.C. 365, 373 S.E.2d 545 (1988).

The question of whether a municipally owned and operated water service system can permissibly engage in competition with a privately owned company has been addressed by our Supreme Court in *Power . Co. v. Elizabeth City,* 188 N.C. 278, 124 S.E. 611 (1924). In *Power Co.,* Elizabeth City Water and Power Company, a privately owned company, had obtained a franchise from the City of Elizabeth City to furnish water to it and its inhabitants for a term of years. The contract expired and was not extended. The City then chose to start a "rival business" by establishing and operating its own water system. As a result, the Power Company filed a civil action against the City alleging, *inter alia,* the City's actions would seriously affect its business and create an unfair competition. The trial court granted the City's motion to dismiss the complaint.

Our Supreme Court affirmed, holding that the Power Company could not restrain the City from operating its own water system upon the ground that it would create an unfair competition under circumstances that it would destroy or impair the value of the Power Company's property. *Id.* In so holding, the Court observed:

> If the contention of plaintiff was sustained, under the facts and circumstances of this case, it would be practically impossible for a municipality ever to own a utility where a privately owned one then existed. Every rival business in every-day life affects its competitors, sometimes destructively, by having cheaper rent, better location, more efficient help, better marketable product, etc.

*Id.* at 285, 124 S.E. at 614.

More recently, in *Madison Cablevision v. City of Morganton,* 325 N.C. 634, 386 S.E.2d 200 (1989), our Supreme Court considered the applicability of the North Carolina unfair practices act, G.S. § 75-1 *et seq.,* to municipalities engaged in a similar public enterprise—the ownership and operation of a cable television system. In that case, Madison Cablevision, a privately owned company, was operating pursuant to a twenty year franchise to provide cable television service to the City of Morganton. When the franchise expired, the City chose not to renew it and instead, began plans to establish and operate its own

cable television system. As a result, Madison Cablevision filed a civil action against the City alleging, *inter alia*, that the City's actions constituted unfair and deceptive practices, violative of G.S. § 75-1 *et seq.* In affirming summary judgment for defendant City, the Supreme Court stated:

> Because cities are authorized to own and operate cable systems and to prohibit others from doing so without a franchise and are not required to issue franchises, it is clear that the legislature contemplated that there would be situations where private corporations would be displaced by municipal cable systems which would operate without competing franchises being issued. In this situation, the legislature cannot be presumed to have intended that conduct so clearly authorized could give rise to state antitrust liability.

> \* \* \*

> The application of the antitrust provisions of Chapter 75 to municipalities performing functions delegated to them by the legislature would have a paralyzing effect on their ability to effectuate important state policies. Where the legislature has authorized a city to act, it is free to carry out that act without fear that it will later be held liable under state antitrust laws for doing the very act contemplated and authorized by the legislature.

*Id.* at 655-657, 386 S.E.2d at 212-13.

Similarly, we conclude that, under the circumstances shown by the evidence before the trial court, there is no genuine issue of material fact as to whether construction of water lines and related activities by the Town of Atlantic Beach in the annexed area served by plaintiff is unfair, deceptive, or offensive to public policy. As previously noted, the Town constructed its own water system for the annexed area pursuant to statutory authority and, by offering water customers in the annexed area reduced fees for connection to the system, was simply treating those customers in the same manner as it had treated other new customers when extending lines in past annexations. Accordingly, summary judgment was proper as to plaintiff's claim for unfair practices.

### III.

[3] Finally, plaintiff alleged, and contends in this Court, that defendants are estopped from operating its water system in competition

with plaintiff. Equitable estoppel arises when, by its acts, representations, admissions, or by its silence when it has a duty to speak, a party intentionally or through culpable negligence induces another to believe that certain facts exist, and such other person rightfully relies and acts upon that belief to his detriment. *Thompson v. Soles*, 299 N.C. 484, 263 S.E.2d 599 (1980).

In the present case, plaintiff contends that certain language in the 1987 and 1988 annexation ordinances and statements made in 1981 by the Town's then mayor, Max Graff, led it to believe that it possessed an exclusive right to provide water service within the annexed area, that it relied upon that belief, and therefore, the Town is estopped to deny it this right. We disagree.

Plaintiff relies upon language in the annexation ordinances to the effect that since the water service then provided to the annexed areas by plaintiff was comparable to that provided by the Town to water users within its boundaries, the Town would not be required to appropriate funds to extend water and sewer lines to the annexed area. These statements were required by G.S. § 160A-37(e)(3) and G.S. § 160A-35(3)b to insure that residents of the area to be annexed would have access to comparable water service; in no way do they serve as a promise to be rightfully relied upon that the Town would not in the future construct its own water lines within the annexed area or that plaintiff had the exclusive right to furnish water service there. There is no serious issue of fact that the service provided by plaintiff at the time the Town undertook to extend its lines was no longer comparable to that being provided by the Town to other water users within its boundaries. Moreover, as noted above, the Town has the authority under the public enterprise statute to construct and administer its own water system, and even the authority to prevent the operation of a competing system without a franchise. *See* N.C. Gen. Stat. § 160A-311 *et seq.* (1994).

Plaintiff also relies upon statements allegedly made by Max Graff, then Mayor of Atlantic Beach, in 1981, prior to the annexations. At that time, according to evidence offered by plaintiff through the affidavit of its president, Mayor Graff stated that the Town did not intend to provide water service to Saw Grass Condominiums, that plaintiff should continue to provide service to the condominiums, and that the Town would not seek to provide water service to any of the areas contained within plaintiff's service area. According to the affidavit, Mayor Graff also agreed in 1987 that plaintiff would continue to pro-

vide water service to areas proposed to be annexed in west Atlantic Beach. Such evidence, however, does not create a genuine issue of material fact because Mr. Graff's statements, even if made, are not binding on the Town, since there was no evidence that the statements were ever "expressly ratified" by the Town Council. *See* N.C. Gen. Stat. § 160A-16 (1994); *see also* N.C. Gen. Stat. § 160A-67 (1994) (stating that "[e]xcept as otherwise provided by law, the government and general management of the city shall be vested in the council"). Accordingly, there being no action or inaction on the part of defendants upon which plaintiff could rightfully rely it had the exclusive privilege to service the residents within the annexed area, summary judgment was proper as to plaintiff's claim based upon equitable estoppel.

For the foregoing reasons, we affirm in all respects the trial court's order granting summary judgment in favor of defendants and dismissing plaintiff's claims.

Affirmed.

Judges EAGLES and WALKER concur.