PETER M. HALL; PECO, INC.; AIRPORT ROAD APARTMENTS, a Limited Partnership; ALLIANCE-CAROLINA TOOL & MOLD CORPORATION; CAROLYN MITCHELL BENFIELD, Trustee of the Bill J. Benfield Family Trust dated February 1, 2001; BLUE RIDGE PLATING COMPANY, INC.; JACK RAY FERGUSON; FUSCO, LLC; HOBSON CONSTRUCTION CO., INC.; WILLIAM H. HOBSON; INVESTMENT WAREHOUSING, INC.; J.C. STEELE AND SONS, INC.; MATTHEW A. JENKINS and ROBERTA JENKINS, Co-Trustees of the Jenkins Family Trust Created May 24, 1978; METALTREAT, INC.; OVP HOLDINGS, LLC; RAMSEY GROUP, INC.; TRAYMAR ENTERPRISES, INC.; WELLINGTON MOBILE HOME PARK, INC., Petitioners,
v.
CITY OF ASHEVILLE, a North Carolina Municipal Corporation, Respondent.
ASHEVILLE ENDOCRINOLOGY CONSULTANTS, P.A.; ASHEVILLE ENDOCRINOLOGY PROPERTIES, LLC; BARBETTA, LLC; BCD PROPERTIES, LLC; BCL, LLC; BETHESDA LAND AND DEVELOPMENT, LLC; CONTINENTAL TEVES, INC.; DOCTOR J., LLC; CHARLES E. HESTER, SR. and wife, BARBETTA G. HESTER; HOMETRUST BANK; HOPE  A WOMEN'S CANCER CENTER, P.A.; JMS DEVELOPERS, LLC; RIDGEFIELD IV, LLC; RIDGEFIELD BUSINESS CENTER PROPERTY OWNERS ASSOCIATION, INC.; RIDGEFIELD INVESTMENTS, LLC; RIDGEFIELD PROPERTIES, L.L.C.; RIDGEFIELD WOMEN'S CANCER CENTER PROPERTIES, LLC; TELCO COMMUNITY CREDIT UNION; TOOTLAND, LLC; NATHAN E. WILLIAMS, Petitioners,
v.
CITY OF ASHEVILLE, a North Carolina, Municipal Corporation, Respondent.
No. COA07-1520
Court of Appeals of North Carolina
Filed August 5, 2008
This case not for publication
Adams Hendon Carson Crow & Saenger, P.A., by George Ward Hendon and Matthew S. Roberson, for petitioners.
Robert W. Oast, Jr., and William F. Slawter, for respondent.
ELMORE, Judge.
On 7 June 2007, the Buncombe County Superior Court affirmed the annexation of two areas by the City of Asheville (the city).[1] Petitioners, who are property owners in the affected areas, appealed. For the reasons outlined below, we affirm the order of the trial court. On appeal, petitioners attack the annexation based on what they claim to be significant changes in the basis and manner of water service, police protection, and fire protections services offered by the city post-annexation. This issue is largely governed by our statutes, which state:
A statement setting forth the plans of the municipality for extending to the area to be annexed each major municipal service performed within the municipality at the time of annexation. Specifically, such plans shall:
a. Provide for extending police protection, fire protection, solid waste collection and street maintenance services to the area to be annexed on the date of annexation on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation. A contract with a rural fire department to provide fire protection shall be an acceptable method of providing fire protection. If a water distribution system is not available in the area to be annexed, the plans must call for reasonably effective fire protection services until such time as waterlines are made available in such area under existing municipal policies for the extension of waterlines. A contract with a private firm to provide solid waste collection services shall be an acceptable method of providing solid waste collection services.
b. Provide for extension of major trunk water mains and sewer outfall lines into the area to be annexed so that when such lines are constructed, property owners in the area to be annexed will be able to secure public water and sewer service, according to the policies in effect in such municipality for extending water and sewer lines to individual lots or subdivisions. If requested by the owner of an occupied dwelling unit or an operating commercial or industrial property in writing on a form provided by the municipality, which form acknowledges that such extension or extensions will be made according to the current financial policies of the municipality for making such extensions, and if such form is received by the city clerk no later than five days after the public hearing, provide for extension of water and sewer lines to the property or to a point on a public street or road right-of-way adjacent to the property according to the financial policies in effect in such municipality for extending water and sewer lines. If any such requests are timely made, the municipality shall at the time of adoption of the annexation ordinance amend its report and plan for services to reflect and accommodate such requests, if an amendment is necessary. In areas where the municipality is required to extend sewer service according to its policies, but the installation of sewer is not economically feasible due to the unique topography of the area, the municipality shall provide septic system maintenance and repair service until such time as sewer service is provided to properties similarly situated.
c. If extension of major trunk water mains, sewer outfall lines, sewer lines and water lines is necessary, set forth a proposed timetable for construction of such mains, outfalls and lines as soon as possible following the effective date of annexation. In any event, the plans shall call for construction to be completed within two years of the effective date of annexation.
d. Set forth the method under which the municipality plans to finance extension of services into the area to be annexed.
N.C. Gen. Stat. § 160A-47(3) (2007). We will deal with each sub-issue in turn.
Petitioners' first argument focuses on the water service. "When a municipality engages in supplying water to its citizens, it owes the duty of equal service to consumers within its corporate limits, i.e., services must be provided on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation." Carolina Water Serv. v. Town of Atl. Beach, 121 N.C. App. 23, 28, 464 S.E.2d 317, 321 (1995) (citation omitted). Petitioner relies on the fact that just prior to the annexation, the city gave notice that it would no longer provide water as part of a joint regional venture, but would instead operate its own water supply. The city terminated the regional water authority two days after it adopted the annexation ordinances.
Based on this timing, petitioners argue that the basis and manner of the delivery of water service is entirely different. We disagree. As the city argues in its brief, it need not provide identical service. The service must be substantially the same. In this case, the service is substantially identical. The city has at all times owned the reservoirs, and the people who run the system continue to be city employees. Moreover, petitioners' contention that the city's ability to charge non-resident customers more under the new plan will cause them injury is, as the city states, "nothing more than speculation. . . ." As this Court stated many years ago, "grievances and feared injury [constituting] primarily speculation. . . . are not sufficient grounds to show that respondents failed to meet statutory requirements, or that there was an irregularity in the proceedings which resulted in material injury to petitioners." Scovill Mfg. Co. v. Town of Wake Forest, 58 N.C. App. 15, 23, 293 S.E.2d 240, 246 (1982) (citation omitted). Accordingly, we hold that petitioners' arguments regarding the water supply are without merit. Petitioners next attack the city's plan for providing police protection. Petitioners claim that at the time of the annexation, the city was "radically changing the nature of its police department by converting it to a largely rookie force." This contention ignores the testimony offered by Cheryl Lunsford, who handled the police department's human resources. Lunsford testified that the turnover and new hires were "about the same except for the addition of the new positions. That created vacancies. But police officers come and go." It appears that the only difference during the time period at issue was the addition of more sworn officer positions.
Petitioners also aver that there was an insufficient number of new officers added after the annexation. However, as the city notes in its brief, the current Chief of Police, Bill Hogan, testified that the per capita method of determining the proper number of officers is not always the best method of deciding how many new officers should be added. Indeed, he testified that the work-load analysis used is more accurate. Moreover, his testimony that services would be offered on the same basis and in the same manner was entirely unrefuted. The trial court properly relied on the evidence in its findings of fact. Accordingly, petitioners' argument that police services would not be provided "on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation," N.C. Gen. Stat. § 160A-47(3)(a) (2007), is simply not persuasive. Finally, petitioners aver that the fire protection services under the plan are inadequate. We disagree. Though petitioners claim that the placement of fire hydrants does not meet the city's own standards, the testimony of Assistant City Engineer John Echeverri indicated that those standards do not apply, whether before or after annexation, to areas of private development such as the mobile home park at issue here. The testimony of former Deputy Fire Chief Robert Griffin confirmed that fire protection services would be offered "on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation." N.C. Gen. Stat. § 160A-47(3)(a) (2007).
Petitioners also argue that the trial court's assignation of two lots within the annexation areas as "non-urban" was improper. Petitioners contend that these areas had businesses that were largely developed or in the process of being developed at the time of annexation. However, as the city points out, this Court has recently held that "must be developed" does not equate to "under the process of development." Ridgefield Props., L.L.C. v. City of Asheville, 159 N.C. App. 376, 381, 583 S.E.2d 400, 403 (2003). In accordance with that decision, we hold that properties in the process of development that are not yet developed must be considered non-urban for annexation purposes. Petitioners' arguments to the contrary are therefore without merit.
Finally, petitioners argue that the city failed to properly provide a metes and bounds description of the area to be annexed. The city acknowledges that the description was defective. However, it argues that (1) the "descriptions substantially comply with the law[,]" and (2) petitioners' rights were not "materially prejudiced" by the error. We are persuaded by the city's arguments and therefore find no merit to petitioners' arguments.
As the city notes, expert witness John White testified that there are a number of generally accepted ways to resolve such inaccuracies. Moreover, "[o]ur appellate courts, in reviewing annexation procedures, have consistently held that substantial compliance is all that is required in meeting the boundary requirements set forth in the statutes." In re Annexation Ordinance, 62 N.C. App. 588, 598, 303 S.E.2d 380, 385 (1983) (citations omitted).
We also find no material prejudice to petitioners. Our statutes demand that we remand for further proceedings "if procedural irregularities are found to have materially prejudiced the substantive rights of any of the petitioners." N.C. Gen. Stat. § 160A-50(g)(1) (2007). The requirement for a metes and bounds description is procedural in nature; the section of our statutes dealing with that requirement is titled "Procedure for annexation." N.C. Gen. Stat. § 160A-49 (2007). As the city notes, there is no indication in the record that any petitioner was unclear as to what property was affected by the annexation. No material prejudice resulted from any error; as such, we find no merit to petitioners' contentions. Having conducted a thorough review of the briefs and record, we affirm the order of the trial court.
Affirmed.
Judges MCGEE and JACKSON concur.
Report per Rule 30(e).
NOTES
[1] This Court notes that this matter was originally filed as two separate actions and was consolidated for a single trial. For the purposes of this appeal, the matters are identical; unless otherwise noted, we will therefore treat both areas as one throughout this opinion.